IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                        Case Nos.: 4:10cr19/RH
                                                  4:10cv401/RH/EMT

GODFREY ONUGHA

_____

## REPORT AND RECOMMENDATION

This case is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, as corrected (docs. 38, 40, 41; *see also* doc. 44). The Government filed a response (doc. 39) and Defendant filed a reply (doc. 45). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that both Defendant's request for an evidentiary hearing and his § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

### PROCEDURAL and FACTUAL BACKGROUND

On April 14, 2010, Defendant was charged in a two-count indictment with: (1) causing another person to engage in a sexual act by use of force in violation of 18 U.S.C. § 2241(a)(1); and (2) knowingly engaging in a sexual act with another person who was under his custodial and supervisory authority in violation of 18 U.S.C. § 2243(b) (doc. 1). Both charges arose from a single incident involving the same victim that occurred on or about January 19, 2010 (*id.*).

On May 27, 2010, represented by retained counsel R. Timothy Jansen, Defendant signed a plea agreement in which he agreed to plead guilty to count two of the indictment (doc. 20). The agreement indicated that Defendant faced a maximum penalty of 15 years' imprisonment, a three-year term of

supervised release, and a fine of $250,000 (*id.* at 1). Upon Defendant's adjudication of guilt, the Government agreed to dismiss count one of the indictment and not file any further criminal charges against Defendant arising out of the same transaction or occurrence (*id* at 1–2). The agreement also provided that the sentence would be left solely to the discretion of the District Court, and that any predictions of what the sentence may be were not guarantees or binding promises (*id*. at 2–3). The parties reserved the right to appeal any sentence imposed (*id*. at 3).

A Statement of Facts was also presented to the court (docs. 18, 19).[1] According to the Statement of Facts, Defendant was the Chief Dental Officer at the Federal Correctional Institution in Tallahassee, Florida ("FCI Tallahassee"), and M.S. was an inmate detained at the institution under Defendant's custodial and supervisory authority (doc. 19 at 1). The Statement provides:

> Shortly after 4:00 on the afternoon of January 19, 2010, [M.S.] went to the dental unit at FCI Tallahassee. Once inside the dental unit, [M.S.] went back to a small room containing a rolling desk chair and x-ray equipment. While [M.S.] was in the x-ray room, defendant engaged in oral sex with her and ejaculated in [M.S.'s] mouth. Afterward, [M.S.] left the dental office and returned to her housing unit, where she spat the semen in her mouth onto her shirt.

(doc. 19 at 1). M.S. reported the incident that evening to prison authorities, who submitted her shirt to the Florida Department of Law Enforcement laboratory. After DNA analysis, law enforcement confirmed that the DNA profile from the semen recovered from the shirt matched Defendant's DNA profile (*id*. at 2).

The court commenced the plea proceeding by explaining to Defendant that the hearing had been set because Defendant's counsel had advised the clerk that he "might want to" change his plea from guilty to not guilty (doc. 36 at 2). The court advised Defendant that before it accepted a guilty plea, it would talk with him in the courtroom to make sure that this was really what he wanted to do, "to make sure that you understand what you're doing and the consequences of what you're doing," and to ensure that the guilty plea was factually supported (*id*.). The court told Defendant he would be placed under oath, advised him of the importance of answering the court's questions truthfully, and told Defendant to alert the court if he did not understand any of its questions or wanted time to speak with

---

[1] Document 18 is the original, unredacted version of the Statement of Facts, and document 19 is the redacted version, where the name of the inmate with whom Defendant had sexual contact is blacked out.

counsel (*id.* at 2–3).  The court inquired about Defendant's educational background and advised him of his rights (*id*. at 4–6).  It asked whether Defendant understood the charges against him, whether he had read the Statement of Facts, and whether he agreed with the Government's version of facts as presented therein, and Defendant answered in the affirmative (*id*. at 6–8).  The court then informed Defendant about the maximum sentence he faced, which was fifteen years incarceration, a $250,000 fine, and three years of supervised release (*id*. at 8–9).  It told Defendant that despite the fact that his attorney was a very experienced lawyer, counsel could not predict what the guidelines would call for in Defendant's case (*id.* at 9–10).  Defendant was advised—and indicated that he understood—that if counsel's estimate of the guidelines was incorrect, or if he was dissatisfied with the sentence imposed by the court, this would not be a basis for withdrawal of his guilty plea (*id.* at 10–11).  Defendant acknowledged his signature on the plea agreement and supplement[2] and assured the court that he had no agreement with the Government that was not included in those two documents (*id.* at 11–12).  Defendant further agreed that there had been no threats or pressure or force used against him to secure his guilty plea, that he had had sufficient time to discuss his case with counsel, and that he was satisfied with counsel's representation of him (*id.* at 12–13).  Counsel for both parties assured the court that the plea was freely and voluntarily made with full knowledge of the consequences (*id.* at 13).  Counsel for the Government noted that Defendant was a naturalized citizen and stated:

> The Government is aware of nothing in the law at this time which would result in deportation, but we are not making any representations about whether this plea will have a possible negative impact in his immigration status.  We simply don't know one way or the other.  So there are no promises in that regard.

(doc. 36 at 13).  The court explained to Defendant that the Supreme Court had recently issued a decision [Padilla v. Kentucky] in which it held that the district court must advise a defendant at the time of his plea of any possible negative consequences dealing with immigration.  The court stated that it "[did not] know of any basis why this conviction would affect your citizenship" but that it "[did not] purport to be an expert on all things on immigration" and noted that this criminal case was completely separate from any immigration proceeding (doc. 36 at 14).  Defendant responded that he understood

---

[2] In the Northern District of Florida, Tallahassee division, anytime there is a plea agreement, there is also a supplement that addresses solely the issue of Defendant's cooperation and, in the event of an agreement to cooperate, sets forth the terms of the cooperation agreement (doc. 36 at 18).

and the court then asked whether he had ample opportunity to consult with counsel "as fully as [he wished] on any subject relating to immigration and naturalization, [his] citizenship and this conviction," to which Defendant also responded in the affirmative (*id.*).

The court then asked Defendant "[k]nowing the rights [he would be] waiving and considering everything we've discussed here this afternoon" how he wished to plead (doc. 36 at 14). Defendant stated that he was pleading guilty because he was in fact guilty (*id.* at 15). The court adjudicated him guilty and provided information and instruction about the probation officer's process of preparing a Presentence Investigation Report ("PSR") (*id.* at 15–16).

Near the conclusion of the proceeding, defense counsel stated:

Your Honor, there is one matter I bring to your attention. The plea he has entered may cause him to have to register as a sex offender, and I talked to Cindy Wilson about it, and I have gone over it with my client. I have gone over parts of the whole thing, but I just want the court to know, if they want to put that, he understands that, and I don't know if you want to put that on the record, Your Honor (doc. 36 at 17).

The court responded:

Well, I probably should have brought it up. Dr. Onugha, you understand that that's a condition. Again, I don't know that it does require your registration, but it seems likely to me that it will. In any event, the requirement will be that you comply with the law in that respect. Do you understand?

(Doc. 36 at 17–18). Defendant responded that he did (*id.* at 18).

Two days after the plea proceeding the district court entered an "Order on Improper Advice Regarding Maximum Term of Supervised Release" (doc. 23). In this order the court corrected the information previously provided to Defendant to reflect that in lieu of facing a three year term of supervised release, Defendant was actually subject to a term of at least five years and up to a life term of supervised release (*id*. at 2). Counsel was instructed to so inform his client, who would then have the opportunity to move to withdraw his guilty plea based on having received this specific incorrect information (*id*.). If no such motion was forthcoming, counsel was instructed to file a notice, on or before June 22, 2010, confirming that he had conferred with this client in this regard (*id*.). On June 28, 2010, after  counsel failed to timely file a notice as instructed, the court entered an "Order Requiring the Defendant's Attorney to File His Past-due Notice" (doc. 24). On July 8, 2010, counsel

filed a "Notice of Compliance of [sic] Order on Improper Advice Regarding Maximum Term of Supervised Release," in which he indicated that Defendant did not wish to withdraw his plea (doc. 25). There was also no suggestion that Defendant wished to withdraw his plea on any other basis (*see id.*).

The PSR was disclosed to Defendant on or about July 9, 2010 (doc. 26). The PSR calculated a Base Offense Level of 14 and a two-level downward adjustment for acceptance of responsibility,[3] for a Total Offense Level of 12 (PSR at ¶¶ 14–23). Defendant had no criminal history points and therefore a criminal history category of I, which yielded a guideline imprisonment range of 10 to 16 months (PSR at ¶¶ 26, 48).

Part D of the PSR enumerated the court's sentencing options. Paragraph 53, from the portion explaining custodial options, provided as follows:

> In accordance with 42 U.S.C. § 16913, the defendant shall register as a sex offender in each jurisdiction where he/she resides, is employed, or is a student. For initial registration purposes, the defendant shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence. The defendant shall initially register before completing a sentence of imprisonment with respect to the offense giving rise to the registration. The defendant is required to keep the registration current by appearing in person in at least one jurisdiction in which the defendant is registered and reporting any changes in name, residence, employment, or student status not later than three (3) business days after the change has occurred.

The identical mandatory language was repeated in paragraph 59 of the PSR in the portion of the report dealing with probation. Furthermore, the PSR also provided that "[p]ursuant to § 5B1.3, the defendant's conviction for the instant offense qualifies him(her) as a sex offender, which requires the defendant to participate in a program approved by the United States Probation Office for the treatment of sex offenders" (PSR at ¶ 60).

Defendant filed objections to factual matters unrelated to the offense conduct and matters of sentencing, except that he urged that a departure under § 5K2.0 was appropriate based on circumstances of a kind not adequately taken into account in the Guidelines (doc. 27 at 1–2). There was no objection to the mention of the mandatory sex offender registration.

---

[3]Defendant was not entitled to a three-level downward adjustment because his offense level was not 16 or greater. *See* U.S.S.G. § 3E1.1(b).

The Government filed a sentencing memorandum in which it noted that the facts underlying the alleged offense conduct were in dispute as the only two witnesses were Defendant and the victim (doc. 30 at 2).  The victim's account that Defendant used physical force to initiate the sexual contact was consistent with other statements she had made contemporaneous with the event (*id.*).  However, her credibility was suspect due to her prior history of fraud and theft offenses and her filing a civil suit against Defendant, and for this reason the Government agreed to dismiss count one of the indictment and would not argue that Defendant forcibly assaulted the victim (*id.*).  Defendant, on the other hand, initially claimed that he was sexually assaulted, although in his interview with the probation officer he characterized the sexual encounter as consensual (*id.* at 2, 11, 16; PSR at ¶ 12).  The Government noted that it was not asking the court to rely upon the victim's claim that Defendant forcibly assaulted her, but only that it did not want to mislead the court by leaving the court with the impression that the victim agreed with Defendant's claim that this was a purely consensual encounter initiated by the victim (doc. 30 at 2–3).  Additionally, Defendant presented evidence tending to establish his lengthy public service and excellent work history, in response to which the Government noted a prior complaint filed against Defendant by a female co-worker involving alleged inappropriate and forcible conduct of a sexual nature (*id.* at 3).  An investigation revealed no wrongdoing in that situation (*id.*).

Sentencing was conducted on August 12, 2010.  The court asked Defendant whether he had read the PSR and addendum and discussed them with his attorney, and Defendant told the court that he had (doc. 35 at 2).  Counsel addressed inconsistencies in the victim's various accounts of the incident and noted that his client had already been served with a civil lawsuit in this case,[4] arguing that these facts undermined the credibility of the victim's claims that this was not a consensual encounter (*id.* at 4–10).  Luis Hernandez testified on Defendant's behalf about procedures at the prison and as a character witness (*id.* at 10–21), and Defendant's wife, Miriam Onugha, briefly addressed the court as well (*id.* at 21–22).  Counsel argued for leniency for his client (*id.* at 22– 25), and Defendant personally addressed the court detailing his career and years of service to the country and

---

[4] Songambele v. Onugha, et al., case no. 4:10cv241/RH/WCS, was originally filed in the Second Judicial Circuit in and for Leon County, Florida on April 22, 2010, and removed to federal court on June 10, 2010.  The record reflects that a notice of settlement was filed on May 22, 2011, and the case was dismissed (case 4:10cv241/RH/WCS, doc. 62–64).

his interactions with the inmate (*id.* at 25–31). There was additional argument about the credibility of the respective versions of events and the appropriate sentence in light of the fact that Defendant would probably lose his dental license and his career (*id*. at 31–37). Neither counsel nor Defendant raised any objection to, or even mentioned, the language in the PSR regarding mandatory sex offender registration.

In imposing sentence, the court concluded that the appropriate sentence should be within the guideline range, but at the low end (doc. 35 at 37). It noted Defendant's long career of public service and that the facts were still to some degree disputed, but concluded that, at least for sentencing purposes, it was the inmate who initiated the contact and Defendant's offense was that he went along with it (*id.* at 37–39). The court noted inconsistencies in both Defendant's and the inmate's version of events and Defendant's "high station" in life and the loss of his public service career, for which he probably previously had enjoyed great respect (*id.* at 39–42). Neither the ramifications of a sex offender registration nor those stemming from a felony conviction were specifically mentioned. The court sentenced Defendant to a term of five months imprisonment, followed by a term of five years of supervised release including five months of home detention and a $3,000 fine (*id.* at 43, 44–45). The court indicated that supervised release would be under the court's standard conditions and enumerated certain additional special conditions, including participation in sex-offender treatment, to include psychological testing (*id.* at 43–44). The court stated that it did not have at its fingertips "which of these [conditions] are mandatory terms under the statute for sex offenders" (*id.* at 44). It specifically pronounced that Defendant would "be required to register as a sex offender to the extent required by law in each jurisdiction where it's required" (*id.*). After the court imposed sentence, it advised Defendant of his appellate rights (*id*. at 46). Defendant was directed to self-surrender to his designated institution in sixty days, by 2:00 p.m. (*id.* at 47). The record reflects that Defendant did not appeal.

On September 14, 2010 Defendant, through counsel,[5] filed an untitled document[6] in which he sought relief from his plea agreement (doc. 38).  Defendant argued that he should be entitled to withdraw his plea because the plea agreement did not inform him that he was to be classified as a sex offender pursuant to 42 U.S.C. § 16913, counsel did not inform Defendant of the conditions associated with being a sexual offender, and the court failed to properly inform him at the time it took his plea that it was required to classify Defendant as such (doc. 40 at 3).  Defendant argues that before imposition of sentence, he was never informed by either counsel or the court of the requirements and implications of being classified as a sex offender, and only learned of same six days after sentencing (doc. 40 at 4).  Through his motion, Defendant sought an evidentiary hearing to prove that his plea was not freely and voluntarily entered because he did not understand at the time he entered his plea "what it would mean" to be labeled a sex offender (*id*. at 4–5).  He argues that the court should have inquired into whether Defendant understood the implications of being labeled as such and the possible consequences that arise from such a label (*id.* at 6).  The Government opposes the relief requested (doc. 39).

<u>LEGAL ANALYSIS</u>

<u>Mootness</u>

As an initial matter, the court addresses the issue of mootness.  Defendant was sentenced to a five-month term of imprisonment, which he has served in its entirety.[7]  Although Defendant is no longer incarcerated, this case is not necessarily moot.  Once attached, federal jurisdiction is not

---

[5] The attorney who filed this motion on Defendant's behalf, Thomas B. Luka, Esq., was not the same attorney who represented him throughout the plea and sentencing proceedings.

[6] Although the document itself does not bear a title, counsel electronically filed it as a "Request for Post-Conviction Relief" (doc. 38).  The clerk subsequently re-docketed it as a motion to vacate (doc. 40), and citations will henceforth be to the document as identified by the clerk (i.e., as the motion to vacate).  Defendant also filed a document that was electronically filed as an "Amended Request for Relief and Evidentiary Hearing," in which he sought only to correct the case number on the first page (doc. 41).  The court determined that the submission was properly a correction rather than an amendment (*see* doc. 44), and it is document 40 that remains pending before the court and is at issue here.

[7] BOP records indicate Defendant was released on March 10, 2011. http://www.bop.gov/iloc2/LocateInmate.jsp.

automatically defeated by the release of a defendant before the section 2255 motion is resolved.  *See* Carafas v. LaVallee, 391 U.S. 234, 238 (1968).  For instance, if a defendant is serving a term of supervised release, he is still subject to restrictions on his liberty which could be affected if he prevails in an action challenging his conviction and sentence.  *See* Dawson v. Scott, 50 F.3d 884, 886 n.2 (11th Cir. 1995) (citing Jago v. Van Curen, 454 U.S. 14, 21 n.3 (1981) (per curiam); United States v. Eske, 925 F.2d 205, 206 n.2 (7th Cir. 1991)); Cleckler v. United States, 410 F. App'x 279 (11th Cir. 2011) (citing Dawson);  Kusay v. United States, 62 F.3d 192 (7th Cir. 1995); Minor v. Dugger, 864 F.2d 124, 127 (11th Cir. 1989).  Therefore, despite a release from incarceration, such a defendant remains "in custody" within the meaning of 28 U.S.C. § 2255.  *See* United States v. Brown, 117 F.3d 471, 475 (11th Cir. 1997); *see also* Jones v. Cunningham, 371 U.S. 236, 240–43 (1963) (holding that paroled prisoner is in custody when the terms of his release impose "significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally"); United States v. Essig, 10 F.3d 968, 970 n.3 (3d Cir. 1993) (holding expressly that supervised release satisfies the "in custody" requirement of § 2255).  Here, Defendant is presently serving a term of supervised release; thus, his case is not moot.

General Standard of Review in § 2255 Proceedings

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States; (2) exceeded its jurisdiction; (3) exceeded the maximum authorized by law; or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 F. App'x 290 (11th Cir. 2005).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); Mills v. United States, 36 F.3d at 1055 (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); United States v. Frady, 456 U.S. 152, 165 (1982).  Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes: (1) cause for not raising the ground on direct appeal; and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Substantive Analysis of Defendant's Claim That He Should Be Permitted to Withdraw Plea

Rule 11 of the Federal Rules of Criminal Procedure provides that after the court has imposed sentence, a defendant may not withdraw a plea of guilty or nolo contendere, but that the plea may be

set aside only on direct appeal or collateral attack. Fed. R. Crim. P. 11(e).[8]  The Government argues that Defendant's claim that his plea was involuntary is procedurally barred due to his failure to raise it on appeal.  In Bousley v. United States, the Court stated that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." 523 U.S. at 621 (quoting Mabry v. Johnson, 467, 504, 508 (1984)).  The Court went on to state that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."  523 U.S. at 621.  Defendant's failure to challenge his plea on direct review thus appears to result in a procedural bar.

Even assuming Defendant can circumvent the procedural bar, his motion fails on the merits. To pass constitutional muster, a guilty plea must be entered knowingly, intelligently and voluntarily. Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005).  A guilty plea entered by a defendant who is "fully aware of the direct consequences" of his plea, including the actual value of commitments made by the court, prosecutor, or counsel, must stand unless shown to have been induced by threats or misrepresentation.  Brady v. United States, 397 U.S. 742, 755  (1970).  Federal law is clear that a defendant need not be informed about collateral consequences of his plea, and failure to so inform him does not render the plea involuntary.  See Hill v. Lockhart, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary."); see also McCarthy v. United States, 320 F.3d 1230, 1234 (11th Cir. 2003) (Neither the court nor counsel is constitutionally required to make a defendant aware of collateral consequences of a plea); United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) ("[C]ounsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance."); Ali v. U.S. Atty. Gen., 443 F.3d 804, 812 n.7 (11th Cir. 2006) (citing Campbell, 778 F.2d at 768).

Defense counsel attempts to circumvent the above-cited case law—holding that a defendant need not be informed of the collateral consequences of his plea—by couching his claim in terms of

_____

[8]Although Defendant states that he is not seeking relief pursuant to Rule 11(e), the cases he cites both address a situation in which a defendant sought to withdraw their pleas prior to sentencing (see doc. 45 at 4, citing United States v. Buckles, 843 F.2d 469, 471–72 (11th Cir. 1998); United States v. Weaver, 275 F.3d 1320 (11th Cir. 2001)).

a due process violation or a breach of contract (*see* doc. 45 at 4). The case law, however, is abundantly clear that neither the district court nor counsel has to inform a defendant of the requirement that he register as a sex offender in order for his guilty plea to be valid, because such a registration requirement is a collateral consequence of the conviction or plea. *See* United States v. Cottle, 355 F. App'x 18, 20–21 (6th Cir. 2009) (where district court ordered defendant to register as a sex offender as prescribed by law, whether he must actually register is controlled by state and federal law and is beyond the control or responsibility of the court); Virsnieks v. Smith, 521 F.3d 707, 715 (7th Cir. 2008) (defendant's claim that he was not informed adequately about the potential that he would be ordered to register as a sex offender failed because registration was a collateral consequence of which the state was not required to inform him); Munday v. Lampert, 215 F. App'x 593, 595 (9th Cir. 2006) (the fact that defendant could be designated a "predatory sex offender" was a collateral consequence of defendant's plea and counsel was not constitutionally ineffective for his failure to so inform the defendant); United States v. Ballard, 334 F. App'x 141, 143–44 (10th Cir. 2009) (sex offender registration held to be an insufficient collateral consequence of justify *audita querela* relief); Gore v. Andrews, 99 F.3d 1149 (10th Cir. 1996) (unpublished) (sentencing court's failure to inform defendant of the registration requirement does not constitute prejudice sufficient to overcome his procedural default, nor is counsel's failure to inform a client of the collateral consequences of a guilty plea ineffective assistance of counsel); United States v. Alford, No. 5:02cr8/RH/WCS (doc. 73); Griggs v. McNeill, Case No.: 5:07cv211/RH/MD, 2009 WL 347721 (N.D. Fla. Feb. 9, 2009) (the requirement of registering as a sex offender is a collateral consequence under state and federal law); *see also* Blaylock v. Stingley, 907 F.2d 154 (9th Cir. 1990) (unpublished) (referring to registration requirement as a remaining collateral consequence of conviction). Furthermore, the record reflects that the issue of sex offender registration was raised during the plea proceeding, and included as part of the PSR to which Defendant did not object.

Defendant makes much of the fact that the registration became mandatory upon conviction, and he was neither informed of this fact nor of exactly what it meant to have to register as a sex offender. This argument is unpersuasive. There are many collateral consequences from a simple felony conviction, and these are not set forth and explained to defendants during their court proceedings.

Defendant did not raise an ineffective assistance of counsel claim in his initial motion. The Government addressed this argument in its response (doc. 39 at 3–4), and hence Defendant addressed it in his reply (doc. 45 at 7). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Gaskin v. Secretary, Dept. of Corrections, 494 F.3d 997, 1002 (11th Cir. 2007). "Strickland's two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990) (citing Hill v. Lockhart, 474 U.S. 52 (1985)); United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697.

Defendant's case fails on both prongs. In accordance with the case law set forth above, counsel was not constitutionally ineffective for his failure to further discuss the collateral consequences of Defendant's conviction. The issue was mentioned at the plea proceeding, and the mandatory nature of the registration was clearly set forth in the PSR (*see* doc. 36 at 17–18; PSR ¶¶ 53, 59). With respect to the prejudice prong, to the extent Defendant claims that he would not have entered a plea of guilty, he cannot establish prejudice. Regardless of the disputes that remained surrounding the issue of consent and/or who initiated the sexual encounter, there was abundant evidence, including Defendant's admission, that sexual contact occurred, as described above. The issue of consent, even if Defendant were able to prove consent, is irrelevant to Defendant's culpability under 18 U.S.C. § 2243(b), and his conviction at trial would have been all but certain. *See, e.g.*, United States v. Smith, 336 F. App'x 978, 985 (11th Cir. 2009) (unpublished) (noting that 18 U.S.C. § 2243(b) criminalizes "sexual acts between a prison official and a prisoner, regardless of consent"). After a conviction, he would still have been required to register as a sex offender but the applicable guidelines range would have been higher because he would not have received credit for acceptance

of responsibility. Thus, Defendant has failed to establish either prong of the <u>Strickland</u> test, or that he is entitled to relief.

Section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief." A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004); <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). In this case, no evidentiary hearing is warranted, and Defendant's motion should be denied.

CERTIFICATE OF APPEALABILITY

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (doc. 40) be **DENIED and DISMISSED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>15</u><sup>th</sup> day of April 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**